**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE BEACH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| Douglas Brilliant, | ) | Chapter 7 |
|       Debtor | ) | Case No. 26-50053-jrs |
| | ) | |

---

| | | |
|---|---|---|
| Sean Dana, | ) | |
|       Plaintiff, | ) | Adversary No.: _____ |
| | ) | |
| v. | ) | |
| | ) | |
| Douglas Brilliant,, | ) | |
|       Defendant. | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
PURSUANT TO 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4)**

**COMES NOW** the Plaintiff, by and through counsel, and files his Complaint to

Determine Dischargeability Of Debt Pursuant To 11 U.S.C. §§ 523(A)(2)(A) And 523(A)(4)

as follows::

1.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 151 and 1334, and

pursuant to the above-styled Chapter 7 Bankruptcy case filed by the Defendant.

2.

This is a core proceeding within the contemplation of 28 U.S.C. §157, and Plaintiff

consents to the entry of a final order or judgment by this Court if it is determined that the Court,

absent consent of the parties, cannot enter final order or judgment consistent with Article III of

the United States Constitution.

3.

Defendant filed for relief under 11 U.S.C. Chapter 7 on or about January 2, 2026.

4.

Plaintiff is listed as an unsecured creditor in the Defendant's Chapter 7 schedules.

5.

The instant adversary case seeks a declaration from this Court that the amounts owed to

the Plaintiff are non-dischargeable debt pursuant to the following sections of the Bankruptcy

Code:

28 U.S.C. §523(a)(2)(A):   False pretenses, false representations, and actual fraud;

and

28 U.S.C. §523(a)(4):   For Fraud or defalcation while acting in a fiduciary capacity,

embezzlement, or larceny.

## **FACTUAL BACKGROUND**

6.

Defendant, Steven Gorn (hereinafter "Gorn"), James O. Sullivan (hereinafter "Sullivan"),

and Plaintiff herein were the owners of a company known as Stone Medical Group, LLC  ("SMG

LLC").   The representative shares of SMG LLC were approximately as follows:

| | |
|---|---|
| Steven Gorn through Gorn and Associates Inc. (hereinafter "GA"): | 32% |
| Defendant through Brilliant Enterprises, Inc. (hereinafter "BE") | 32% |
| Sullivan: | 4% |
| Plaintiff through S and D Wholesale, Inc.: | 32% |

7.

In or about December of 2019, the four aforementioned owners came to an agreement for the Defendant, Sullivan, and Gorn to purchase Plaintiff's ownership interest in SMG LLC and its related entities (hereinafter "Buyout Agreement").

8.

To memorialize the terms of the Buyout Agreement, in December of 2019, the Defendant, Sullivan, and Gorn caused SMG LLC; Medical Supply Management, LLC; ABS Holdings, LLC; ABS II, LLC; ABS III, LLC; Greenlands Stores, LLC; 4All Ventures, LLC; Health Authority, LLC; Dipromed, LLC; Inventory Management Services, LLC; Super Shoppe, LLC; Universal Sourcing Group, LLC, Northern Sourcing Group, LLC; Caribbean Distributors, LLC; Physicians Acute Care Group, LLC; Broward Acute Care Solutions, LLC; and Smoothie Holdings LLC (collectively "the Promissory Entities")to execute a promissory note (the "Promissory Note") in favor of Plaintiff individually in connection with sale of Plaintiff's ownership interest in SMG LLC and the Promissory Entities. A true and correct copy of the Promissory Note is attached hereto as Exhibit "A" and incorporated herein by reference.

9.

The Promissory Note required amortizing payments commencing January 30, 2022.

10.

The face amount of the Promissory Note reflected the balance of the purchase price that SMG LLC and the Promissory Entities unconditionally promised to pay to the Plaintiff for Plaintiff's ownership interest in SMG LLC and the Promissory Entities.

11.

The representative shares of SMG LLC were then adjusted approximately as follows:

GA: 47.5%

BE: 47.5%

Sullivan: 5%

12.

This unconditional payment obligation was also reflected in the Membership Interest

Redemption Agreement that SMG LLC and the Promissory Entities and Plaintiff executed on or

about the time that  SMG LLC and the Promissory Entities executed the Promissory Note in

Plaintiff's favor.

13.

The Promissory Note provided, among other things, that:

"Commencing on January 30, 2022 and continuing on each succeeding month thereafter

through the Maturity Date (each such date is called a "Payment Date"), [the Promissory

Entities] Makers shall pay to [Mr. Dana] equal monthly payments, including principal and

interest computed by determining the payment necessary to amortize the principal

outstanding after the December 30, 2021 payment at the Interest rate over the forty-two

(42) remaining payments."   *See* Exhibit A.

14.

SMG LLC and the Promissory Entities defaulted on its payment obligations under the

Promissory Note from and after January 2022.

15.

As a result of SMG's default, Plaintiff herein filed a lawsuit against SMG LLC and the

Promissory Entities on  September 8, 2022 in Palm Beach County Circuit Court in the case styled

*Sean Dana v. Stone Medical Group, LLC, et al.*; Case No.: 2022-CA-008846XXX-MB (the

"Promissory Note Litigation").

16.

 SMG LLC and the Promissory Entities admitted default under the Promissory Note by its

answer in the Promissory Note Litigation on October 4, 2022.

17.

SMG LLC and the Promissory Entities defended the Promissory Note Litigation by, among

other things, asserting that *impossibility of performance – viz.*, that SMG LLC and the Promissory

Entities could not fulfill its payment obligations because it was insolvent as a result of "operating

losses" and a "lack of cash flow."

18.

As will be proven in the instant case, these "operating losses" and "lack of cash flow"

were fictions created by the systematic looting of the revenues and assets of SMG LLC by the

Defendant herein, along with Gorn and Sullivan.

19.

The looting of the revenues and assets of SMG LLC began at time same time that the

Defendant, Gorn, and Sullivan caused the Promissory Note Entities to default on the Promissory

Note, and continued until some time after the Assignment for Benefit of Creditors as described

herein.

20.

Ultimately, SMG LLC and the Promissory Entities' defenses in the Promissory Note

Litigation were rejected by the presiding court and the court entered a *Final Summary Judgment in*

*Favor of Sean Dana* on March 21, 2023 (the "Final Judgment"). A true and correct copy of the Final Judgment is attached hereto as Exhibit "B" and incorporated herein by reference.

21.

Prior to January of 2022, SMG LLC and the Promissory Entities continued to receive revenue which would have been enough to make the company solvent and to continue to pay its obligation to the Plaintiff.

22.

Instead of retaining the revenue of SMG LLC in SMG LLC's accounts or to pay creditors (such as the Plaintiff); Defendant, Sullivan, and Gorn caused SMG LLC to transfer substantial amounts of revenue to themselves through their own shell companies for no consideration and during the time when they claimed SMG LLC to be insolvent.

23.

The transfers from SMG LLC were done as a means of leaving SMG LLC insolvent, while at the same time benefiting the financial interests of GA, which was owned and controlled by Gorn, and BE, which was owned and controlled by Defendant.

24.

Based upon the intentional actions of Defendant, SMG LLC and the Promissory Entities were caused to breach its obligations to Plaintiff under the Promissory Note.

25.

SMG LLC was insolvent no later than January 2022, yet Defendant, Sullivan, and Gorn received substantial amounts in transfers to GA and BE after the insolvency date.

26.

Sullivan, who is an attorney and certified public accountant, along with Defendant and Gorn, oversaw and approved these transactions made by SMG LLC and the Promissory Entities in Sullivan's capacity as member and chief financial officer.

27.

GA is a Florida corporation with its principal place of business in Boca Raton, Palm Beach County, Florida.

28.

GA is controlled and owned by Steven Gorn and has no employees, assets, accounts, or operations; although Gorn has given his family members GA credit cards, and GA does have a bank account.

29.

GA is a mere instrumentality that was used to receive and hide the transfers described in this Complaint, which were then transferred to Defendant for his sole personal benefit and not as income to which he was lawfully entitled.

30.

BE is a Florida corporation with its principal place of business in Weston, Broward County, Florida.

31.

BE is controlled and owned by Defendant and has no employees, assets, accounts, or operations.

32.

BE is a mere instrumentality that was used to receive and hide the transfers described in this Complaint, which were then transferred to Defendant for his for his sole personal benefit and not as income to which he was lawfully entitled.

35.

During the Promissory Note litigation, SMG LLC concealed from the court that Gorn, (through GA) and Defendant, (through BE) directed SMG LLC to make millions of dollars in distributions to GA and BE for the sole benefit of the Defendant and Gorn.

36.

Some of these distributions were made at the same time that the Defendant was representing to the court that SMG LLC had "operating losses" and that a "lack of cash flow" made it "impossible" to pay Plaintiff what was owed.

37.

On March 20, 2023, in anticipation the Final Judgment in the Promissory Note Litigation, and shortly after on April 28, 2023, Defendant caused three Assignment For The Benefit Of Creditors (hereinafter "ABC") to be filed on behalf of each of the following companies owned and controlled by him (collectively the "ABC Litigation"):

Stone Medical Group, LLC d/b/a Dipromed Case No. 50-2023-CA-004713-XXXX-MB

4ALL Ventures, LLC Case No. 50-2023-CA-003716-XXXX-MB

Health Authority, LLC Case No. 50-2023-CA-009845-XXXX-MB

38.

The ABC Litigation was filed in Circuit Court of Palm Beach County. Despite being affirmatively told via email by the Counsel for the Assignee in the ABC Litigation that Plaintiff and Plaintiff's Counsel would receive the books and records associated with the ABC Litigation,

to date Defendant, the Assignee, Counsel for the Assignors, Sullivan, and Gorn, have not produced such documents to Plaintiff. The Assignee in the ABC Litigation was Philip J. Von Khale of Moecker & Associates. Counsel for the Assignee Thomas G. Zeichman Beighly, Myrick, Udell & Lynne, PA. Counsel for the Assignors (Stone Medical Group, LLC; 4ALL Ventures, LLC; Health Authority, LLC) in the ABC litigation was Chad Pugatch of Lorium Law. When asked about the books and records of the Promissory Entities in the ABC Litigation; Defendant stated that they are not in his possession and control.

39.

While SMG LLC was included in the ABC Litigation, a number of the Promissory Entities were intentionally left out so that Defendant, Sullivan, and Gorn could continue to siphon off monies from SMG LLC and the Promissory Entities.

40.

Defendant's scheme to defraud creditors like Plaintiff did not end with the ABC Litigation and the Promissory Note Litigation as Defendant continued the business of medical supply sales with newly formed companies prior to, during, and after the ABC (the "Alter Ego Entities").

41.

The Alter Ego entities include but are not limited to the following: :

1. American Care Group LLC- Florida Entity formed on 3/8/2023

Address: 20855 NW 9th Ct Miami, FL 33169

Title Manager: Wellness Partner Holding LLC


2. Quickhealth LLC- Florida entity formed on 5/25/2023-

Address: 1161 HOLLAND DRIVE #225 BOCA RATON, FL 33487

Title Manager: Health Venture Associates LLC

3. Compounding Associates LLC- Florida entity form on 3/13/2023-

Address: 6453 W Rogers Cir Suit S4Boca Raton, FL 33487

Title Manager- Specialty Associates LLC

4. Partners of Excellence LLC- Florida entity formed on 3/14/2023

Address: 2828 Seacrest Blvd Boynton Beach, FL 33435

Title Manager: Specialty Associates LLC

5. Specialty Partners Group LLC- Florida entity formed on 3/13/2023

Address: 875 Meadows Road Boca Raton FL 33486

Title Manager: Specialty Associates LLC

6. Wellness America LLC- Florida entity formed on 3/8/2023

Address: 2828 Seacrest Blvd #213 Boynton Beach FL 33635

Title Manager: Wellness Partner Holding LLC

7. Villages Wellness Center INC- Reinstated Febuary 23,2023

Address:510 COUNTRY LINE RD #233/T, LADY LAKE, FL 32159

Registered Agent Name & Address: BRILLIANT, DOUGLAS, PRES

155 OFFICE PLAZA DR1ST FL

TALLAHASSEE, FL 32301

8. Lake Erie Medical LLC - PA entity formed 3/21/2023

Address: 1275 Glenlivet Drive Ste 100 Allentown PA 18106

Per bankruptcy schedules, Defendant owns 25% of this entity

9.   Peachtree Medical Group, LLC - GA entity formed 5/31/2023

address: 13010 Morris Road, Suite 650, Alpharetta, GA, 30004, USA

Per bankruptcy schedules, Defendant owns 25% of this entity

42.

As of the filing of this Amended Complaint, it is unclear whether Defendant has an

ownership interest in each of the Alter Ego Entities or simply has an ongoing business

relationship that commenced in March of 2023. Defendant has received funds from each of these

entities since causing the ABC litigation and Defaulting on the Promissory Note owed to

Plaintiff.

43.

Defendant's refusal to produce the ABC litigation books and records is an ongoing

attempt to further conceal from Plaintiff and other creditors the fact that Defendant , Gorn, and

Sullivan transferred and formed new companies in order to circumvent the ABC litigation and

continue business as usual.

44.

As described above, most if not all of the Alter Ego companies were formed within weeks prior to the commencement of the ABC's and share similar addresses and title managers and have seen played a major role in Defendant's scheme to continue business while breaching his duties to Plaintiff, Creditors, and the Promissory entities while turning a profit.

45.

Furthermore, SMG LLC was reinstated on 7/8/2025 and amended to reflect that the Gorn is the registered agent at Gorn's Address, and GA is the title manager along with BE.

47.

In Early March of 2023, Defendant, Gorn, and Sullivan transferred funds from SMG LLC through the entity Orange Acute Care Network Inc.("Orange") and then to National Distribution Contracting Inc in order to continue to do business outside of the ABC Litigation.. Orange was an entity formed by Sullivan and then transferred to a former employee for little to no value. Again, Defendant took steps to defraud creditors and move funds in anticipation of Plaintiff's Judgment and immediately prior to the ABC litigation.

48.

 Based upon a review of SMG LLC's records, Plaintiff has thus far identified the following transfers to Sullivan's former company Orange County Acute Care Network Inc.. (the "Orange Transfers"):

| **Orange Transfers** | | | |
|---|---|---|---|
| Date of Transfer | | Method of Transfer/Account | Amount |

| | | | | |
|---|---|---|---|---|
| 3/1/2023 | | Wire (Amerant XX09) | $ | 60,000.00 |
| 3/14/2023 | | Wire (Synovus XX06) | $ | 23,000.00 |
| | | **Total:** | **$** | **83,000.00** |

49.

Upon information and belief, a partnership that is made up of some if not all of the Promissory Entities (the "SMG Partnership"), was intentionally left off of Plaintiff's redemption agreement and promissory note, and was not subject to the ABC Litigation.

50.

SMG Partnership's existence is evidenced by the discrepancy on Page 47 of co-conspirator Gorn's Bankruptcy petition as it lists the employment identification number of SMG Partnership as belonging to Stone Medical Group. It provides further details on Stone Medical Group "currently- Assignment for Benefit of Creditors (Palm Beach County; Moecker & Associates, Inc. As Assignee; from 1/22/2002- 4/23/2025; EIN:83-4632686). The correct employment identification number allocation is as follows:

Stone Medical Group, LLC: XX-XXX9120

SMG Partnership: XX-XXX 2686

51.

Gorn further confirmed the existence of SMG Partnership in Defendants statements at his 341 hearing.   Plaintiff maintains that SMG Partnership was formed without his knowledge or consent while Plaintiff still retained an ownership interest in the Promissory entities.

52.

Defendant, Sullivan, and Gorn, just months after the commencement of the ABC litigation, caused and authorized the Promissory Entity Medical Supply Management LLC to move its principal place of business out of Florida and to 50 Mechanic Street Ballston Spa, New York. This entity is one of many that was left out of the ABC litigation, and one that Defendant systematically caused to default on its obligations to Plaintiff. The relocation of the entity was authorized by Defendant and is a clear indication that Defendant, Gorn, and Sullivan continued to operate while representing insolvency to plaintiff, other creditors, and the court.

53.

Based upon a review of SMG LLC's records, Plaintiff has thus far identified the following fraudulent transfers to BE (the "BE Transfers"):

| BE Transfers | | | | |
|---|---|---|---|---|
| Date of Transfer | | Method of Transfer/Account | | Amount |
| | | | | |
| 2/11/2022 | | Wire (BOA XX69) | | $ 62,402.78 |
| 3/14/2022 | | Wire (BOA XX69) | | $ 66,884.00 |
| 4/12/2022 | | Wire (BOA XX69) | | $ 81,017.67 |
| 5/13/2022 | | Wire (BOA XX69) | | $ 45,374.99 |
| 6/15/2022 | | Wire (BOA XX69) | | $ 85,379.10 |
| 7/11/2022 | | Wire (BOA XX69) | | $ 92,012.46 |
| 7/19/2022 | | Wire (BOA XX69) | | $ 27,631.94 |

| | | | | |
|---|---|---|---|---|
| 8/12/2022 | | Wire (BOA XX69) | $ | 92,326.70 |
| 8/19/2022 | | Wire (BOA XX69) | $ | 29,676.25 |
| 9/16/2022 | | Wire (BOA XX69) | $ | 90,156.84 |
| 9/20/2022 | | Wire (BOA XX69) | $ | 15,667.89 |
| 10/21/2022 | | Wire (BOA XX69) | $ | 16,010.50 |
| 11/16/2022 | | Wire (BOA XX69) | $ | 40,071.60 |
| 11/28/2022 | | Wire (BOA XX69) | $ | 24,613.70 |
| 12/2/2022 | | Wire (BOA XX69) | $ | 11,750.00 |
| 12/12/2022 | | Wire (BOA XX69) | $ | 89,065.62 |
| 1/13/2023 | | Wire (BOA XX69) | $ | 177,455.29 |
| 2/7/2023 | | Wire (BOA XX69) | $ | 50,000.00 |
| 2/14/2023 | | Wire (BOA XX69) | $ | 101,146.56 |
| | | **Total:** | **$** | **1,198,643.89** |

54.

GA and BE continued to receive distributions from SMG LLC without consideration and for the sole benefit of Defendant and Brilliant in the months leading up to and after the ABC Litigation/Final Judgment was entered.

55.

Plaintiff , alleging fraudulent transfers, then filed a lawsuit against Defendant, GA, Gorn, and BE on  December 30, 2024 in Palm Beach County Circuit Court in the case styled *Sean Dana v. Gorn & Associates inc. , et al.*; Case No.: 2024-CA-012239 (the "Fraudulent Transfer Litigation"). The Fraudulent

Transfer Litigation remains open but has been stayed pursuant to both Defendant and Gorn commencing Chapter 7 Bankruptcy respectively.

56.

Based upon a review of SMG LLC's records, Plaintiff has thus far identified the following fraudulent transfers to Gorn & Associates Inc. (the "GA Transfers"):

| **GA Transfers** | | | | | |
|---|---|---|---|---|---|
| Date of Transfer | | Method of Transfer/Account | | Amount | |
| | | | | | |
| 2/2/2022 | | Wire (Chase XX54) | | $ | 375,000.00 |
| 3/4/2022 | | Wire (Chase XX54) | | $ | 15,000.00 |
| 3/25/2022 | | Wire (Chase XX54) | | $ | 39,000.00 |
| 12/2/2022 | | Wire (Chase XX54) | | $ | 10,000.00 |
| 12/22/2022 | | Wire (Chase XX54) | | $ | 20,000.00 |
| 1/18/2023 | | Wire (Chase XX54) | | $ | 10,000.00 |
| | | **Total:** | | **$** | **469,000.00** |
| | | | | | |
| | | | | | |

57.

Brilliant Enterprises Transfers and the Gorn & Associates Transfers shall be referred to collectively as the "Fraudulent Transfers."

**28 U.S.C. §523(A)(2)(A):   ACTUAL FRAUD**

58.

Plaintiff hereby repeats, reiterates, and realleges all paragraphs of the instant amended complaint as if fully set forth herein.

59.

The circumstances surrounding the transfers to the Defendant through his controlled entity clearly show the existence of multiple "badges of fraud" – and, thus, actual fraud – as defined by applicable law.

60.

Each of the transfers from SMG LLC to GA made for less than reasonably equivalent value as there they were made without receipt of any value by the SMG LLC from the initial and subsequent transferees.

61.

SMG LLC was insolvent at the time that of the transfers.

62.

Each of the recipients of the transfers were insiders or *alter egos* of insiders who were used as mere instrumentalities for the insiders' sole benefit.

63.

SMG LLC had defaulted on the Promissory Note and SMG LLC was being pursued by Plaintiff for collection, including being sued or threatened with suit during the time of and before the transfers were made; therefore, making clear that the transfers were made, in part, to avoid the obligations to the Plaintiff through improper and unlawful means.

64.

The transfers were concealed from the Plaintiff at all times, particularly during the ABC Litigation and the Promissory Note Litigation.

65.

This concealment was for the purpose of obtaining monies received by the Defendant from SMG LLC and other Promissory Note Entities.

66.

SMG LLC was used as a conduit through which the Defendant and others funneled revenue from SMG LLC and other promissory note entities under the guise of the undisclosed SMG Partnership, and as a means of hiding funds owed to the Plaintiff.

67.

The transfers constituted substantially all of SMG LLC's assets, as well as the assets and revenues of the other Promissory Note Entities.

68.

The transfers occurred shortly before or shortly after a substantial debt was incurred – *i.e.*, certain payments under the Promissory Note.

69

Through the use of multiple entities, some of which were included in the ABC Litigation as a result of the directives of the Defendant and others and some of which were intentionally excluded from the scrutiny of the ABC Litigation, the Defendant operated a scheme to make SMG LLC and the promissory note entities appear to lack revenue and assets by converting said revenue and assets to themselves through a complicated use of what co-conspirator Gorn referred to as a "holding company".

70.

In his 2004 deposition, Gorn testified that GA was his holding company, owned by him, and became inactive sometime in 2025.

71.

Gorn testified that GA had no employees, no assets, and (at least for the relevant period) no operations other than receiving money and distributing it to him personally.

72.

Gorn testified that the distributions to GA were decided by Defendant, himself, and Jim O'Sullivan, although there are no records/minutes of meetings

73.

Also during his deposition, Gorn testified the 2/2/2022 transfer of Three Hundred, Seventy-Five and NO/100 ($375,000) dollars from SMG LLC to GA was payback of a personal loan from himself to SMG LLC.   However, Gorn was unable to produce any promissory note or loan agreement for this loan, and evidence shows that payments were made to him just prior to and after the ABC Litigation, a time when SMG LLC was supposed to be insolvent.

74.

Gorn also testified that, after receiving $375,000, GA transferred most of the funds to his personal account.

75.

The amounts which were transferred from SMG LLC to GA and then ultimately to the Defendant were the property of SMG LLC or other promissory note entities, which were owed to the Plaintiff.

76.

All of the aforementioned transfers were authorized by the Defendant as one of the controlling members of SMG LLC.

77.

Notwithstanding the ABC Litigation, Defendant's fraud committed at least partly, if not wholly, for the purpose of depriving the Plaintiff with his ownership interest and promised payments under the promissory note.

78.

Defendant's fraud is not limited to his actions solely with SMG LLC, but to his actions with regards to the revenue of the other promissory note entities, including those not included in the ABC Litigation.

79.

Defendant, as a member of SMG LLC and, as a result, one of the decision makers related to the filing of the ABC Litigation, intentionally left off entities from the ABC Litigation for the purpose of using them to funnel monies to himself, Gorn, O'Sullivan.

80.

Defendant's scheme and the complexity thereof was clear and actual fraud, committed for the purpose of depriving the Plaintiff of his assets, including his interest in SMG LLC and the promissory note.

81.

The transfers were made with the actual intent to hinder, delay, and/or defraud Defendant.

82.

In furtherance of the Defendant's intention to defraud the Plaintiff, he now claims through the ABC Litigation that SMG LLC was insolvent.   If so, then SMG LLC was insolvent at the time Defendant caused it to sign a promissory note to the Plaintiff, as well as during times that monies were paid by SMG LLC to the Defendant.

83.

As a result of Defendant's fraud, Plaintiff has been damaged in the amount of the GA and BE Transfers.

## 28 U.S.C. §523(A)(4):   FOR FRAUD OR DEFALCATION WHILE ACTING IN A FIDUCIARY CAPACITY, EMBEZZLEMENT, OR LARCENY

84.

Plaintiff hereby repeats, reiterates, and realleges all paragraphs of the instant complaint as if fully set forth herein.

85.

At all times material, GA and BE collectively owned ninety-three percent (93%) of SMG.

86.

Defendant and Gorn exercised financial and operational control over SMG LLC by and through these ownership interests.

87.

Defendant and Gorn were the primary officers and managers of SMG LLC and, therefore, were solely responsible for its long-term strategic planning, its day-to-day operations, and for the transfers hereinafter described.

88.

As the primary officers and managers of SMG LLC, Defendant and Gorn owed a fiduciary duty to the Plaintiff to ensure the solvency of SMG LLC and to ensure that SMG LLC paid its financial obligation to the Plaintiff.

89.

Were it not for the breach of this fiduciary duty to the Plaintiff, SMG LLC would have been able to meet its financial obligations to the Plaintiff.

90.

Rather than honor his duties, Defendant committed the act of defalcation by a fiduciary by misappropriating funds owned by SMG LLC to his self-controlled entity for no consideration.

91.

Defendant was a fiduciary to Plaintiff in his capacity as a creditor to SMG LLC, a business owned and controlled by Defendant.

92.

Due to the Defendant's position as a fiduciary, Defendant's defalcation extends not only to the funds misappropriated to himself through BE, but also through funds misappropriated to GA.

93.

At all times material, Defendant was an officer and owner of SMG LLC and, when SMG LLC became insolvent/entered the zone of insolvency, he owed a fiduciary duty to SMG LLC's creditors, including Plaintiff.

94.

Defendant breached his fiduciary duty to Plaintiff by directing that the GA Transfers be made.

95.

Gorn now claims that beginning in June or July of 2021 he lent approximately Six Hundred Thousand ($600,000.00) plus other sums over time to SMG LLC in order to obtain a line of credit and/or credit card so that SMG LLC could stay in business.

95.

Gorn has admitted during his 2004 examination that the money lent to SMG LLC to "keep the business afloat" was paid back to him in the amount of "about $500,000.00".

96.

By his authorization of payment to Gorn, in his capacity as an insider of SMG LLC, Defendant has breached his fiduciary duty to the creditors of SMG LLC, including the Plaintiff herein.

97.

Gorn also admitted during his 2004 examination that Defendant agreed for Gorn to be paid his debt back by SMG LLC, and that he agreed for SMG LLC to make payments to Gorn in further breach of his fiduciary duty to SMG LLC.

98.

Plaintiff was damaged as a result of Defendant's breaches of his fiduciary duty.

99.

As the promissory note was a means by which the Plaintiff was being reimbursed for his ownership interest in SMG LLC, the obligation created a constructive trust between the Plaintiff and the Defendant.

100.

Defendant not only had an obligation to see that Plaintiff's debt was paid by SMG LLC, but he also benefitted from an increased interest his ownership stake.   Further Plaintiff retained

an equitable right to declare the promissory note in default and to demand the return of his ownership interest.

## 101.

After the filing of the ABC Litigation, funds were held in an account owned by SMG LLC which were sent to GA and BA.   As an Assignment for Benefit of Creditors had been filed and was pending Defendant, as a person exercising control over SMG LLC and its accounts, was an actual fiduciary for all creditors, including Plaintiff.

## 102.

Defendant's actions in allowing or directing funds to be transferred from the accounts of SMG LLC during the ABC Litigation was clear defalcation by him as a fiduciary, as well as embezzlement given that the assignee did not know about or give authorization for said transfers.

## **STANDING**

## 103.

Plaintiff hereby repeats, reiterates, and realleges all paragraphs of the instant complaint as if fully set forth herein.

## 104.

Plaintiff has standing to bring the instant action as he is a victim of the Defendant's actual fraud and the Defendant was a fiduciary for funds owed to creditors.

## 105.

In the instant action, Plaintiff does not seek a declaration of non-dischargeability for all creditors, but for himself alone, and against the Defendant and not against SMG LLC or any of the ABC entities.

## 106.

No other adversary proceeding has been filed by any other entity claiming non-dischargeability of debts owed by the Defendant, as such Plaintiff is the only entity with a valid claim against the Defendant.

<div align="center">107.</div>

As a result of the aforementioned, Plaintiff has clear standing to bring this matter under applicable law.

**WHEREFORE,** Plaintiff prays as follows:

a)      That this Amended Complaint be filed, read and considered;

b)      That this Court declare that Defendant's debt to the Plaintiff is not subject to discharge upon the discharge of the instant case;

c)      That this Honorable Court grant such further and other relief as it may deem just and proper.

<div style="margin-left: 50%;">

Respectfully submitted by:
**GARDNER LAW FIRM**

/s/ Robert M. Gardner, Jr.
Robert M. Gardner, Jr.
Ga. Bar No. 284640
Attorney for Plaintiff

</div>

114 N. Broad Street
Post Office Box 310
Winder, Georgia 30680
Telephone:     (678) 678-9045
Email: rg@gardnerlawfirm.com